**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Linda M. Peterson, | ) | No. CV 05-1622-PHX-NVW |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Federal Express Corporation Long Term Disability Plan, et al., | ) ) ) | |
| Defendants. | ) ) | |
| | ) | |

The court has before it Plaintiff's Motion for Summary Judgment Regarding Standard of Review, Doc. # 17; Defendants' Cross-Motion for Summary Judgement and Response to Plaintiff's Motion, Doc. # 20; Plaintiff's Reply to Defendants' Motion for Summary Judgment and a Motion to Stay, Doc. # 24; Defendants' Reply Regarding Standard of Review and Response to Plaintiffs' Motion to Stay Case; Plaintiff's Statement of Facts, Doc. # 19; and Defendants' Statement of Facts, Doc. # 21.

Peterson brought this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1132(a)(1)(B). The issue before the court is the proper standard of review for determining whether Federal Express erred by denying Peterson's disability claim. Peterson argues that the appropriate level of review is de novo while Federal Express argues that abuse of discretion should be the reviewing standard.

1    **I.     Statement of Facts**

2            Peterson filed a claim for short-term disability benefits on November 12, 2001, which

3    she received until May 12, 2002.  Plaintiff's Statement of Facts ("PSOF") at ¶ 4.  Peterson

4    then applied for long-term disability benefits, which she received between May 13, 2001, and

5    July 1, 2002, and between September 3, 2002, and July 13, 2004.  *Id.*  On June 4, 2004,

6    Broadspire, the claims paying administrator for the Federal Express Corporation Long Term

7    Disability Plan ("Plan"), advised Peterson that her disability benefits would be terminated

8    on July 13, 2004. PSOF at ¶ 6.  Peterson timely appealed on November 30, 2004.  PSOF at

9    ¶¶ 7, 8.  On December 1, 2004, Broadspire confirmed the receipt of Peterson's appeal and

10   informed her that she had until December 7, 2004, to submit any additional medical

11   information.  PSOF at ¶ 9.  On December 1, 2004, Peterson submitted additional medical

12   evidence supporting her disability claim.  PSOF at ¶ 10.  Broadspire received the additional

13   evidence by December 6, 2004.  On January 5, 2005, the Federal Express Benefit Review

14   Committee ("Committee") met and decided to uphold the denial of Peterson's long-term

15   disability claim.  Defendants' Statement of Facts ("DSOF") at ¶ 28.  On May 5, 2005,

16   Federal Express issued a letter to Peterson's attorney communicating this decision.  PSOF

17   at ¶ 20.  Federal Express did not communicate with Peterson between December 6, 2004, and

18   May 5, 2005.  PSOF at ¶ 21.

19           On May 31, 2005, Peterson filed her Complaint in federal court.

20   **II.    Standard of Review**

21           **A.     Standard for Summary Judgment**

22           To defeat a motion for summary judgment, the opposing party must set forth specific

23   facts showing that there is a genuine issue of material fact in dispute.  Fed. R. Civ. P. 56(e);

24   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A dispute about a material fact

25   is genuine "if the evidence is such that a reasonable jury could return a verdict for the

26   nonmoving party."  *Id.* at 248 (1986).  In the absence of such facts, "the moving party is

27   entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

28   (1986) (citations omitted).

1    The party seeking summary judgment bears the initial burden of informing the court

2  of the basis for its motion, and identifying those portions of the pleadings, depositions,

3  answers to interrogatories, and admissions on file, together with the affidavits, if any, which

4  it believes demonstrate the absence of any genuine issue of material fact. *Id.* Summary

5  judgment is appropriate against a party who "fails to make a showing sufficient to establish

6  the existence of an element essential to that party's case, and on which that party will bear

7  the burden of proof at trial." *Id.* at 322. Although the initial burden is on the movant to show

8  the absence of a genuine issue of material fact, this burden may be discharged by indicating

9  to the court that there is an absence of evidence to support the nonmoving party's claims.

10 *See Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 193 n.2 (3d Cir. 2001). When

11 parties file cross motions for summary judgment, a court must determine whether summary

12 judgment for either party is appropriate. *Fair Housing Council of Riverside County, Inc. v.*

13 *Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

14    **B.    Standard of Review for Denial of Benefits**

15    "A denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a *de*

16 *novo* standard unless the benefit plan gives the administrator or fiduciary discretionary

17 authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*

18 *Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan provides such

19 discretionary authority to the administrator or fiduciary, the standard of review is abuse of

20 discretion. *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1321 (9th Cir. 1994).

21    However, if an affected beneficiary produces material, probative evidence, beyond

22 the mere fact that an apparent conflict exists, that the plan administrators were breaching

23 their fiduciary duty, a presumption arises that the administrator breached its fiduciary

24 obligations to the beneficiary. *Hensley v. Northwest Permanente P.C. Retirement Plan &*

25 *Trust*, 258 F.3d 986, 995 (9th Cir. 2001). "[M]aterial, probative evidence may consist of

26 inconsistencies in the plan administrator's reasons, insufficiency of those reasons, or

27 procedural irregularities in the processing of the beneficiaries claims," *Nord v. Black and*

28 *Decker Disability Plan*, 356 F.3d 1008, 1010 (9th Cir. 2004), as well as the failure to provide

1   a claimant with a full and fair hearing.  *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1110 (9th

2   Cir. 1999).  Where a plaintiff meets his initial burden, the administrator "must rebut the

3   presumption by producing evidence to show that the conflict of interest did not affect its

4   decision to deny or terminate benefits."  *Hensley*, 258 F.3d at 995.  If the administrator fails

5   to rebut the presumption, the district court reviews the administrator's decision to deny

6   benefits under the de novo standard.  *Id.*

7   **III.   Analysis**

8        The Plan provides that the Administrator shall have discretion in determining

9   eligibility benefits.  PSOF at ¶ 13. ("The determination shall be made in a fair and consistent

10  manner in accordance with the Plan's terms and its decision shall be final, subject only to a

11  determination by a court of competent jurisdiction that the committee's decision was

12  arbitrary and capricious.").  Peterson does not dispute that the Plan confers discretion upon

13  the Administrator.  The standard of review is therefore abuse of discretion unless Peterson

14  can produce material, probative evidence that the plan administrators breached their fiduciary

15  duties.

16       Peterson argues that de novo review should apply because Federal Express breached

17  its fiduciary duty by (1) violating ERISA's procedural requirements and (2) violating its own

18  internal guidelines as set forth in the Plan.

19            **B.    Procedural Irregularities**

20                 **1.    ERISA**

21       Peterson argues that Federal Express failed to act on her appeal within the ERISA-

22  mandated time limit. The relevant provision for time within which an administrator must

23  issue a decision after receiving an appeal is 29 C.F.R. 2560.503-1(i)(3).   Under this

24  provision, if a multiemployer plan meets regularly and utilizes a committee to make disability

25  determinations, then the plan administrator must issue a decision within five days of making

26  a benefit determination.  *See* 29 C.F.R. 2560.503-1(i)(3)(ii).   Otherwise, the plan

27  administrator must issue a decision within forty-five days of receiving an appeal.  *See* 29

28  C.F.R. 2560.503-1(i)(3)(i).  Here, Peterson submitted her appeal on November 30, 2004, the

1  Committee met and made its disability determination on January 5, 2005, yet Federal Express

2  did not render a decision until May 5, 2005.  Thus, it is clear that Federal Express failed to

3  act in a timely manner irrespective of whether 29 C.F.R. 2560.503-1(i)(3)(i) or (i)(3)(ii) is

4  the applicable provision.[1]

5       To the extent Federal Express argues that because the Committee reached a

6  "determination" of Peterson's claim on January 5, 2005, Federal Express did not violate

7  ERISA, this argument is rejected.  ERISA requires that a claimant receive notice, in a timely

8  manner, that a claim has been denied or accepted.  Federal Express failed to provide Peterson

9  with notice of its decision within the requisite amount of time.

10      Peterson has therefore established that Federal Express violated ERISA.

11         **2.**    **The Plan**

12      Peterson also argues that this conduct violated Federal Express's own internal

13  guidelines.  The Plan's relevant provision provides:

> The Administrator shall appoint a committee for the purpose of conducting reviews of denial of benefits and providing the claimant with written notice of the decision reached by such committee, setting forth the specific reasons for the decision and specific references to the provisions of the Plan upon which the decision is based. The committee shall meet at least quarterly and its decision on review shall be made no later than the date of its next meeting immediately following the Administrator's receipt or a written request for review, unless such request is filed within 30 days prior to such meeting.  In such a case, a decision shall be made no later than the date of the second meeting following the receipt of the written request for review.  However, if special circumstances, as determined by the Administrator, require a further extension of time for processing, a decision shall be rendered by the committee not later than the third meeting following the Administrator's receipt of the written request for review.

21  A.R. at 452.

22      Peterson's claim fails for the reason that Federal Express's internal guidelines–unlike

23  the ERISA guidelines set forth above–do not include any requirement that the Committee

24  provide notice of its disability determination within a fixed amount of time following the

---

[1]It is unnecessary to decide whether 29 C.F.R. 2560.503-1(i)(3)(i) or (i)(3)(ii) is the applicable provision because under either provision, Federal Express failed to act in a timely manner.

1   meeting.[2]  Moreover, Peterson has not introduced any evidence that the Committee failed to

2   decide her claim at the first meeting after when she submitted her appeal and supporting

3   documents.  Indeed, the first page of the administrative record demonstrates that the

4   Committee met on January 5, 2005, and decided to reject her appeal on that date.

5       Peterson has therefore failed to establish that Federal Express violated the terms of

6   the Plan.  However, as discussed below, even if this were a Plan violation, Peterson has not

7   shown a lack of substantial compliance.

8       **C.    Applicable Standard of Review**

9       Peterson argues that the standard of review should be de novo because of (1) Federal

10  Express's violation of ERISA's Regulations and (2) Federal Express's failure to follow its

11  own Plan and internal guidelines regarding the time within which it needed to respond to

12  Peterson's appeal.  Peterson argues that *Jebian v. Hewlett-Packard Co. Employee Benefits*

13  *Org. Income Prot. Plan*, 349 F.3d 1098 (9th Cir. 2003), is controlling, while Federal Express

14  argues that *Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978 (9th Cir. 2005), controls.

15  As discussed below, while neither case is on point, *Gatti* should apply under the facts of this

16  case.

17      **1.    *Jebian***

18      In *Jebian*, the language of the plan provided that a claim was "deemed to have been

19  denied on review" if the administrator neither responded to the appeal within sixty days nor

20  informed the claimant that it needed sixty additional days in which to decide the claim.  349

21  F. 3d at 1102 (quotations omitted).  The plan administrator informed Jebian on the 119th day

22  that his appeal was still pending because it needed to consider additional medical

23  documentation.  *Id.*  There had been no communication between Jebian and the plan

---

25      [2]While the Plan provides that "[t]he appeal committee normally issues a decision on

26  your case within 90 days of receipt of your request," A.R. at 385, this provision does not

27  establish that the Committee violates the Plan by failing to meet the ninety-day time period.

28  The word "normally" informs a Plan participant that the Committee may or may not render
    a decision within the ninety-day period.

1    administrator until that time. *Id.* at 1107. The failure to issue a timely benefits determination

2    or request an extension violated both ERISA and the plan. *Id.* at 1103. After Jebian filed a

3    complaint in federal court, the administrator finally issued a decision denying Jebian's

4    appeal. *Id.* at 1102. The administrator asked the court to review its final decision under the

5    abuse of discretion standard. *Id.* at 1104.

6         The *Jebian* court concluded that when a plan includes a "deemed denied" provision,

7    and the administrator does not issue a decision within that period, de novo review applies to

8    the administrator's final decision. *Id.* at 1105-06 (stating "that where the plan itself provides

9    that a particular procedural violation results in an automatic decision rather than one calling

10   for the exercise of the administrator's discretion, that provision is as enforceable as the

11   provision giving the administrator discretionary authority under other circumstances").

12   However, the *Jebian* court limited its holding by stating that "inconsequential violations of

13   the deadlines would not entitle the claimant to de novo review in the context of ongoing good

14   faith exchange of information between the administrator and the claimant." *Id.* at 1107

15   (citations, alterations, and internal quotation marks omitted). The court also stated that de

16   novo review may not be appropriate when the plan is in "substantial compliance with

17   prescribed procedures." *Id.* at 1107-08.

18         *Jebian* is not controlling here. Unlike in *Jebian,* here the Plan does not contain a

19   "deemed denied" provision–a factor that bore heavily upon the *Jebian* court's decision not

20   to defer to the plan administrators. *See id.* at 1105-06 ("For present purposes, however, we

21   leave the more general issue open and decide only that where the plan itself provides that a

22   particular procedural violation results in an automatic decision rather than one calling for the

23   exercise of the administrator's discretion, that provision is as enforceable as the provision

24   giving the administrator discretionary authority under other circumstances."). Case law

25   supports this interpretation of *Jebian*. *See Mitchell v. Aetna Insurance Co.*, 359 F. Supp. 2d

26   880, 886 (C.D. Cal. 2005) ("First, and most importantly, the actual[] holding of the case

27   limits stripping the abuse of discretion review from plan administrators to cases when *the*

28   *plan itself* provides that a decision is 'deemed denied' if not decided within the deadline.")

(emphasis in original); *Horn v. Provident Life Ins. Co.*, 351 F. Supp. 2d 954, 966 n.7 (N.D. Cal. 2004) ("In contrast to *Jebian,* the policy at issue here does not include the 'deemed denied' language that appears in the pre-2002 regulations. Thus, the Plan language cannot provide an independent basis for concluding that plaintiff's claim was 'deemed denied' upon expiration of the applicable time limit.") (citations omitted).

Even if the "deemed denied" language were not considered essential to *Jebian*, Peterson has failed to establish that Federal Express violated its Plan. *Jebian* involved a situation in which the administrators violated both the plan and the ERISA regulations. By contrast, here Federal Express only violated ERISA.

### 2.   *Gatti*

In *Gatti*, the administrator issued a decision 279 days after the claimant had submitted her request for administrative review, violating ERISA. 415 F.3d at 981. The plan did not contain either a "deemed denied" clause or time limits specifying when the administrator needed to determine an appeal.

The district court, relying on *Jebian*, concluded that the administrator had violated the ERISA regulations, that the claim was "deemed denied," and therefore that de novo review applied. *Id.* The Ninth Circuit reversed, holding that "violations of the time limits established in 29 C.F.R. § 1260.503-1(h) are insufficient to alter the standard of review." *Id.* at 982. The court determined that ERISA's "deemed denial" language in 29 C.F.R. § 1260.503-1(h)(4) (1998) did not have the same effect on the standard of review as when a plan contained "deemed denial" language, as was the case in *Jebian*.[3] *Id.* at 983. The *Gatti* court then stated that the standard for determining whether an ERISA violation shifts the standard of review is whether the "violations are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary harm." *Id.* at 985. The court further distinguished *Jebian* because it involved a plan administrator

---

[3]This provision was amended in 2000 to remove the "deemed denied" language.

1    violating the plan *and* ERISA, while *Gatti* only involved a plan administrator violating

2    ERISA.

3            While *Gatti* appears to apply here, the *Gatti* court limited its holding to the 1998

4    version of ERISA.  *See id.* at 982 n1 (9th Cir. 2005) ("We do not address the question of

5    whether, under the new regulation, claimants who can establish a failure to comply with the

6    claims procedures established by ERISA regulations are entitled to *de novo* consideration of

7    their claims.  The earlier version of the regulation applies to Gatti's claim because her claim

8    was made prior to 2002.").  In this case, the amended version of 29 C.F.R. § 2560.503-1

9    applies because Peterson filed her claim in November 2004.  The additional ERISA provision

10   provides:

11           In the case of the failure of a plan to establish or follow claims procedures consistent
             with the requirements of this section, a claimant shall be deemed to have exhausted
12           the administrative remedies available under the plan and shall be entitled to pursue
             any available remedies under section 502(a) of the Act on the basis that the plan has
13           failed to provide a reasonable claims procedure that would yield a decision on the
             merits of the claim.
14
     29 C.F.R. § 2560.503-1(l).
15
             This case thus raises the question whether the *Gatti* court's analysis should be
16
     extended to cases involving violations of post-1998 versions of the ERISA guidelines.  No
17
     circuit court appears to have addressed whether a violation of 29 C.F.R. § 2560.503-
18
     1(l)–which was added to ERISA after 1998–requires courts to review disability
19
     determinations de novo.[4]  Moreover, the district courts that have considered this issue have
20
     reached inconsistent results.  *Compare Reeves v. Unum Life Ins. Co. of Am.*, 376 F. Supp. 2d
21
     1285, 1293-94 (W.D. Okla. 2005) (holding that under the amended version of ERISA,
22
     violations of the Regulations result in de novo review without an exception for substantial
23
     compliance) *with Goldman v. Hartford Life and Accident Ins. Co.*, 417 F. Supp. 2d 788, 802
24
     (E.D. La. 2006) (concluding that "[a]lthough this change cements the argument that untimely
25
     benefits decisions should presumptively be subject to de *novo review*," de novo review
26

27   _____

28           [4]The parties have not briefed this issue.

1  should not apply when there is no concern about the overall adequacy of the decision-making

2  process).

3         *Gatti* and *Jebian* demonstrate that it is unlikely the Ninth Circuit would interpret 29

4  C.F.R. § 1560.503-1(l) as requiring de novo review every time a plan administrator violates

5  ERISA, no matter how inconsequential the violation.  *Jebian* excuses violations when the

6  employer "substantially complies" with the Regulations and the governing plan, and *Gatti*

7  excuses violations unless they are so flagrant as to affect the substantive relationship between

8  employer and employee.  Therefore, the Ninth Circuit would most likely not interpret C.F.R.

9  § 1560.503-1(l) as requiring de novo review for every ERISA violation.  However, the

10 question remains whether *Jebian*'s "substantial compliance" or *Gatti*'s requirement that the

11 violations be flagrant and affect the substantive relationship between employer or employee

12 should be the governing standard here.

13        Because this case involves an ERISA violation but not a violation of the underlying

14 Plan, the standard enunciated in *Gatti* should apply.  Although this case presents a stronger

15 argument that de novo review should apply than was present in *Gatti* (due to the addition of

16 29 C.F.R. § 1560.503-1(l)), it still falls on the *Gatti* rather than the *Jebian* side of the line.

17        **D.     Application of *Gatti***

18        The remaining question is therefore whether Federal Express's "violations [were] so

19 flagrant as to alter the substantive relationship between the employer and employee, thereby

20 causing the beneficiary harm."

21         Peterson has failed to provide any argument that Federal Express's ERISA violations

22 were so flagrant as to alter the substantive relationship between Federal Express and

23 Peterson.  The only identified ERISA violation is Federal Express's failure to issue its

24 disability determination within the time specified by ERISA.  As the *Gatti* court stated,

25 "violations of the time limits established" in the ERISA Regulations are insufficient to alter

26 the standard of review.   415 F.3d at 982.   Therefore, Federal Express's disability

27 determination of Peterson's claim will be reviewed for an abuse of discretion.

28

1    Even if "substantial compliance" were the standard by which to review Federal
2    Express's conduct, Peterson has failed to demonstrate that Federal Express did not
3    substantially comply with ERISA and its internal guidelines as set forth in the Plan.
4    Broadspire contacted Peterson on December November, 30, 2004, to inform Peterson that
5    she needed to submit additional medical evidence by December 7, 2004. Peterson submitted
6    additional evidence on December 1, 2004, and contacted Broadspire on December 7, 2006,
7    to confirm Broadspire's receipt of the additional evidence. Peterson also informed
8    Broadspire that her appeal was complete. The Committee met and decided to uphold the
9    denial of Peterson's claim on January 5, 2005, as it was required to do under the Plan.
10   However, despite meeting on January 5, 2005, Federal Express failed to issue its decision
11   until May 5, 2005, which clearly violated ERISA. As to the Plan, its language was murky
12   with regard to deadlines. *See* A.R. at 385 ("The appeal committee normally issues a decision
13   on your case within 90 days of receipt of your request.").

14   Peterson's central argument for why Federal Express did not substantially comply
15   with ERISA and its internal guidelines is that there was no communication between Peterson
16   and Federal Express between December 7, 2004, and May 5, 2005. However, there was no
17   need for communication between Peterson and Federal Express beyond January 5, 2005
18   (other than to provide notice to Peterson of its denial). Federal Express did not fail to issue
19   a timely decision because it needed additional medical evidence or more time to review
20   Peterson's appeal, as was the case in *Jebian*. Rather, Federal Express simply failed to
21   provide timely notice of its January 5, 2005 decision. Therefore, under the facts of this case,
22   Peterson has failed to demonstrate that Federal Express did not substantially comply with
23   ERISA or with the language of the Plan. Peterson has not submitted any other arguments for
24   why Federal Express breached its fiduciary duties.

25   IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment
26   Regarding the Standard of Review, Doc. # 17, is denied.

27   IT IS FURTHER ORDERED that Defendants' Cross-Motion for Summary Judgment
28   Regarding the Standard of Review, Doc. # 20, is granted.

1    IT IS FURTHER ORDERED that Plaintiff's Motion to Stay, Doc. # 24, is denied.

2    IT IS FURTHER ORDERED that the parties brief the merits of the case under the

3    abuse of discretion standard of review, submitting separate statements of fact following the

4    procedure prescribed in LRCiv 56.1(a), pursuant to the following schedule:

5        1.    By June 26, 2006: Plaintiff's opening brief.

6        2.    By July 26, 2006: Defendant's answering brief.

7        3.    By August 10, 2006: Plaintiff's reply brief.

8    The court does not contemplate extending this schedule.

9        DATED this 24th day of May 2006.

12    _____

13                    Neil V. Wake
                 United States District Judge